## APPEAL OF ADAM H. SCHWARTZ.
## [ESTATE OF JACOB L. MOYER.]

APPEAL FROM THE DECREE OF THE ORPHANS' COURT OF
BERKS COUNTY.

Argued February 29, 1888—Decided March 19, 1888.

1. The will dated August, 1881, of a testator dying February, 1882, devised to his executor certain real estate, to rent the same and out of the rents to maintain repairs, pay taxes and insurance, a certain monthly allowance to his wife, and to invest any balance remaining for the use of his children, directing, "upon the decease of my wife the rents aforesaid, after payment of repairs, taxes and insurance, shall be divided quarterly among all my said children in equal shares, or their heirs, until the year 1901, at which time my youngest son will be 23 years old," when at the desire of a majority in interest the real estate might be sold, the proceeds to be invested "for the benefit of all my children during their natural life, they to receive the interest semi-annually, and upon their decease the principal to their children absolutely : "

*Held*, that, as the time allowed for the accumulation of unexpended rents,

was indefinite, being for the lifetime of the widow and permitting a longer period than that allowed by § 9, act of April 18, 1853, P. L. 503, and the will not disposing of the accumulations by express words, it was not error to order the distribution of unexpended rents accumulated, to the widow and heirs of the testator.

2. The will directed the investment of the residuary estate, to be held and disposed of by the executor, $5,000 to each of four children when severally arriving at age, and to John the like sum of $5,000 as soon as he could satisfy the executor that he was worth clear of debts, $8,000, explaining that, "I make this provision for my son John, because he has an opportunity in an established business which I cannot give to my other children." At the date of the testator's death John was in business but indebted to the estate in $6,000. The will further provided that in case John became unsuccessful or profligate, and the money due by him had to be collected, any loss sustained should be deducted from his share, and he should receive only "the interest on his share in my whole estate during life." A like provision was made for the payment of interest, for life only, in case of the profligacy of the other legatees. John paid his indebtedness to the estate voluntarily but became and continued insolvent. On distribution :

*Held*, that as the legacy of $5,000 to John was vested, and there was an intent apparent to treat all the children alike, the contingency of his becoming worth $8,000 related only to the time of payment, and it was not error on distribution to order his share to the executor and trustee for investment and the payment to him of the interest thereon.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and CLARK JJ.; TRUNKEY and WILLIAMS, JJ., absent.

No. 362 January Term 1887, Sup. Ct.; court below, No. 19 Argument L. 1885, O. C.

At the adjudication, on June 4, 1886, of the accounts of Adam H. Schwartz, executor and trustee, a contention arose upon certain provisions of the will of Jacob L. Moyer, deceased, dated August 15, 1881. The testator died February 2, 1882; the will was duly admitted to probate and the provisions thereof material to this cause were as follows :

9. Item. [I give and devise unto Adam H. Schwartz all that certain four-story brick store stand, dwelling house, and lot or piece of ground, 725 Penn street, in the city of Reading, containing in front twenty feet and in depth two hundred and seventy feet; and also all that certain three-story brick store stand and lot of ground, No. 818 Penn street, containing in front twenty feet and in depth one hundred and sixty feet, to

have and to hold said properties in trust in manner following, to wit:

*a.* The said Adam H. Schwartz, or his successor, shall rent the same (if not leased at the time of my decease) upon such terms and conditions as may be advantageous to my widow and children; and out of the rents he shall keep it in good repair, pay taxes and insurance.

*b.* The said Adam H. Schwartz, or his successor, shall pay unto my dear wife as long as she remains my widow, for the support of herself and such of my children as may be living with her, the sum of one hundred dollars monthly, and if any balance of said rents is remaining, he shall invest the same for the use of my children as is hereafter directed.

*c.* Upon the decease of my wife the rents aforesaid, after payment of repairs, taxes, and insurance, shall be divided quarterly among all of my said children, in equal shares, or their heirs, until the year of our Lord one thousand nine hundred and one, at which time my youngest son will be twenty-three years old. My desire is then, if a majority of my said children, or their heirs, deem it advantageous, that said two properties be sold, that thereupon the said Adam H. Schwartz, or his successor, shall sell the same, and the proceeds of said sales shall be invested upon real estate securities for the benefit of all my children during their natural life; they to receive interest semi-annually, and upon their decease the principal to their children absolutely.][3]

11. Item. [I order and direct that in case my son John should continue in the leather business, and he need additional capital to carry on the same, my said executor shall advance him such sums as he may require, not exceeding, with what sums I may advance him in my lifetime, eight thousand dollars, he to pay interest on said sum advanced, semi-annually, and after the third year he shall pay unto my said executor on said principal sum, annually, at least one thousand dollars. My hereinafter-named executor, as long as my son John shall be indebted to my estate, shall have the privilege of making any examination of his business affairs, and if he finds that he is neglecting his business and is not progressing, that thereupon my said executor is authorized and directed to sell out his interest, and any loss which may be sustained shall be deducted

from John's share.   Should it be the case that John would be unsuccessful in business by reason of neglect and bad habits, and the moneys due my estate would have to be collected, then he shall only receive the interest upon his share in my whole estate during life.] [4]

14. Item. [All the rest and residue of my estate shall be invested upon real estate security by my said trustee and executor, and shall be held and disposed of by him as follows :

*a.* He shall pay unto my daughter Ellen, when she attains the age of twenty-one years, the sum of five thousand dollars.

*b.* He shall pay unto my son Charles, when he attains the age of twenty-three years, the sum of five thousand dollars.

*c.* He shall pay unto my daughter Anna, when she attains the age of twenty-one years, the sum of five thousand dollars.

*d.* He shall pay unto my son Jacob L., when he attains the age of twenty-three years, the sum of five thousand dollars.] [4]

15. Item. [I hereby order and direct, that as soon as my son John can satisfy my said executor that he is worth clear of debts the sum of eight thousand dollars, that thereupon he shall pay him the sum of five thousand dollars.   I make this provision for my son John, because he has an opportunity in an established business, which I cannot give my other children.] [4]

16. Item. [All moneys remaining not herein otherwise disposed of when my youngest child attains the age of twenty-three years shall be equally divided among all my children.] [4]

18. Item. In case any of my sons before attaining the age of twenty-three years, or my daughters before attaining the age of twenty-one years, my wife and executor should be of opinion that by bad habits and profligacy any one of said children were unfit to have the principal sum of their legacies, then I order and direct such child's share shall be invested upon real estate security, the interest whereof shall be paid unto them during life, and after their decease to their heirs.

19. Item. In case any of my children should die under the age of twenty-one years without issue, such child's share shall go to the surviving children or their heirs.

Testimony was taken from which it appeared that on June 1, 1881, the testator's son John had received from his father $6,000, with which he had gone into the leather business with

Mathias Moyer, his uncle. The testator held John's notes for this $6,000 at the time of his death on February 2, 1882. In February, 1883, John sold his interest in the leather business to his partner, who lifted said notes and paid to John $1,500 in cash. No advancements or payments were ever made to John by his father's executor, and soon after going out of the leather business he became insolvent and so continued.

The adjudication found a balance in the hands of the accountant as executor of $11,286.86, and in his hands, consisting of accumulations from the rents of premises Nos. 725 and 818 Penn street, the sum of $1,250. In determining the distribution of these funds, the court, SCHWARTZ, P. J., ruled:

Under the terms of the will, Adam H. Schwartz is to rent the trust estate, keep it in good repair, pay taxes and insurances out of the rents, and to pay the widow, as long as she remained his widow, for the support of herself and such children as may be living with her, one hundred dollars monthly; and if any balance of said rents remain, he shall invest the same for the use of his children, as in the will afterwards directed. The balance thus accumulated is not disposed of by express words in the will. It may, however, be inferred that the intention of the testator was that the children should enjoy the use and benefit of the investment of the balance or balances for and during their natural lives, and that their children should have the principal or corpus absolutely.

Upon the decease of the widow, the rents, after payment of taxes, insurance, and repairs, are to be divided quarter yearly among the children in equal shares until the year 1901, when the youngest child shall be twenty-three years of age. In 1901 the trust estate, if the majority of the children agree, shall be sold, and the proceeds invested for their benefit during their natural lives, and the interest paid them semi-annually, and after their death the principal to their children. And in case of the marriage of the widow she shall receive only fifty dollars per month during her natural life, and the remaining fifty dollars shall be used and expended for the support of such children of the testator as then remain with her and are under the age of twenty-one years.

By these provisions of the will there will be accumulations

of the income during the lifetime or widowhood of the widow, or until the year 1901, when the youngest child will arrive at the age of twenty-three years; and in either event the accumulation will be for a period longer than that at which the child or the children attained their majority, or a period of twenty-one years. The extreme time allowed for accumulations by the act of April 18, 1853, P. L. 503, is twenty-one years, with the additional allowance for the ordinary period for gestation. In this case it is indefinite, depending on the one hand upon the life or widowhood of the widow. It may be for a longer or shorter period than twenty-one years. The possibility of its being for a longer period renders the provisions in the will void and of no effect: McKee's Appeal, 96 Pa. 277. So also, on the other hand, these accumulations are for a period longer and other than during the minority of the children. Indeed, John was twenty-three years old at the time of the decease of the testator. This is also prohibited by statute: Washington's Estate, 75 Pa. 102; Carson's Appeal, 99 Pa. 325.

The accumulations at this time, as per statement attached, amount to $1,250.26. The same are to be disposed of as if the decedent had died intestate: Grim's Appeal, 109 Pa. 391.

The act of 1853, relating to matters of this kind, says: "And in every case, where an accumulation shall be divided otherwise than as aforesaid, such direction shall be null and void in so far as it shall exceed the limits of this act, and the rents, issues, interests, and profits so directed to be accumulated, contrary to the provisions of this act, shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed." This obviously means that the accumulations in this case, should pass to the widow and heirs, as in case of intestacy.

Upon proceeding to the examination of the statement on the trust account, the same appears to be correct.

The balance in accountant's hands as found by the adjudication on his administration account being $11,286.86, the accountant asked for a credit of $5,000 for legacy paid to Ellen Lewis. This cannot be done or allowed at this time. It is, however, true that the will directs such payments to his children, to his boys when they attain the age of twenty-three years, and to his girls at the age of twenty-one years.

At this time the testator's son John and daughter Ellen have attained said ages respectively. The said John's legacies are clogged by other conditions and limitations, and the fund must remain in the hands of Adam H. Schwartz, as trustee during the lifetime of said John, and interest be paid to him. The said trustee is, however, allowed credit for payment to said Ellen for one fifth of said balance, viz., $2,257.37. He is also ordered and directed to invest for the special benefit as trustee of said John the like sum of $2,257.37, and that he invest the balance of said fund, viz., the sum of $6,772.11, for the three children now continuing in their minority, and in accordance with the intent of the will as construed by us.

It is ordered and decreed that this opinion be made a portion of the former adjudication on this estate.—

Under the foregoing ruling the court ordered a distribution: (1) Of the balance by the administration account; to Ellen Lewis, $2,257.37; to Adam H. Schwartz, as trustee of John Moyer, $2,257.37, and to Adam H. Schwartz, as trustee for the three minor children, $6,772.11. (2) Of the accumulation fund, one third was awarded to the widow, and the remaining two thirds equally divided among the five children, including John.

To this adjudication and distribution various exceptions were filed by the accountant, which, so far as material to the questions here decided, sufficiently appear in the opinion filed February 1, 1887, SCHWARTZ, P. J., which was in part as follows:

During the pendency of these exceptions, Ellen M. Lewis presented her petition to court praying to have the report opened for the purpose of offering evidence showing the value of all property available for the payment of the $5,000 to each of testator's children. The applications were granted. At the time fixed for the further hearing it was shown that, in addition to the assets in the account, the following described property was available to satisfy said legacies, viz.: An undivided one third interest in certain real estate, located near High Bridge, in the state of New Jersey, estimated to be worth $2,000; a two-story brick dwelling house, situated at Reading, Pa., worth about $1,500; two adjoining lots of ground, also at

Reading, Pa., of the probable value of $500, and a stock interest in the Phœnix Plumbago Company of the appraised value of $4,000; altogether amounting to $8,000. The real property will probably bring, if sold, the values put upon it by the witness, but no testimony was offered showing the actual or real value of the Plumbago stock. In the distribution towards said $5,000 legacies, the court should not take said stock into account.

The only other question of importance for consideration under the exceptions, depends upon the construction of the will in so far as the same relates to John Moyer, a son and beneficiary under it. The testator's intent on this point can only be gathered from the four corners of his will.

The testator in item 11 provided among other things that his executor should loan his son John out of the funds of the estate, if deemed necessary to successfully carry on his shoe and leather business, a sum not exceeding $8,000, with that advanced by himself in his lifetime, and fixed the payment of interest thereon and the repayment of the principal; and further directed as follows: "Should it be the case that John would be unsuccessful in business by reason of neglect or bad habits, and the moneys due my estate would have to be collected, then he shall only receive the interest upon his share of my estate during life." In item 14 he directs his executor to invest his estate not otherwise disposed of on good real estate security, and directs him to pay out of said fund to his four other children, two sons and two daughters, each the sum of $5,000, to his sons at the age of twenty-three years, and to his daughters at the age of twenty-one years. In item 15 he orders his executor, as soon as he is satisfied that his son John is worth $8,000 "clear of all debts," to pay to him the sum of $5,000, and explains that he added this condition to the legacy for the reason that he had given him "an opportunity in an established business which I cannot give my other children." By the 16th item he bequeaths in equal shares to all of his children, any residue that may remain undisposed of after his youngest son, Jacob L., shall have attained the age of twenty-three years. By the 18th item of his will it is made and provided as follows: "In case any of my sons before attaining the age of twenty-three years, or my daughters attaining the age

of twenty-one years, my wife and executor should be of the opinion that by bad habits and profligacy any of said children were unfit to have the principal sum of their legacies, then I order and direct such child's share shall be invested upon real estate security, the interest whereof shall be paid unto them during life, and after their decease to their heirs." There does not appear to be any other item or clause in the will bearing upon the $5,000 legacies to each of the children.

It is evident that it was the testator's intent that his widow and executor should, previously to the payment of said legacies of $5,000 to any of his four younger children, pass upon his or her fitness to receive it. On finding the one under consideration to be of good habits, economical and frugal, that then the corpus pass to him or her. But if, on the contrary, they should find him or her to be of bad habits and profligate, that then the executor should invest it, secured on real estate, and pay the interest to him or her during life, and after death the principal to the heirs at law. It is equally evident that he did not intend that any of his children, including John, should receive the corpus of the legacies, except upon the showing of good habits and of frugal character.

John's legacy is, however, further clogged by the additional condition that he be possessed of an estate in his own right, clear of all "debts," of the value of $8,000, preceding the right to receive this legacy. The testator clearly intended that all his children should participate equally in his estate. The only distinction he made was that John should not be entitled to the possession of the $5,000 legacy until he could show an estate of his own of the clear value of $8,000. It appears to have been the testator's intent that wherever and whenever his children, or any of them, failed to meet the conditions of his will, the shares of those thus failing should remain in his executor's hands, be safely invested by him on real estate, and the interest thereof paid to the party so failing, during life, and after his death the principal to be paid to his next of kin and heirs at law. In my opinion, and I so decide, that the said legacy to John Moyer of $5,000 is not forfeited by his inability to show an estate of $8,000; but that on such failure it becomes the duty of the executor to invest the same securely, and pay the interest to him as often as he receives the same,

for and during his life, and after his death the principal to his heirs.

It should, however, be remarked that the fund to meet said legacies of $5,000 to each of decedent's five children appears to be insufficient at this time to pay said legacies in full. The distribution on this part of the will, will be such as to protect the executor. It should be further found, and I so find, that the legacy of said John Moyer is due and payable under the provisions of decedent's will, but that the legatee is unable to show an estate as required by the will. Hence it becomes the duty of the executor to make the investment contemplated by the will for the use of said John Moyer. . . . .

[The accountant is now allowed a credit of $3,000 for the payment of the legacy of $5,000 to Ellen M. Lewis.][2] [And is ordered and directed to set apart the sum of three thousand dollars, and invest the same safely on good real estate security, and pay the interest thereof as often as he receives it to said John Moyer until he shall demonstrate to him and Mrs. Mary Moyer, widow of the decedent, that he is worth $8,000 clear of all liabilities or debts, when he may, if the said John shows that his habits are good, and that he is frugal and not prodigal, pay the principal to him.][1] . . . .

With these modifications the adjudication of the trust estate is confirmed.

Thereupon the accountant took this appeal, assigning as error:

1. The order directing the investment of $3,000, for the benefit of John Moyer.[1]

2. The refusal to allow to the accountant a credit of $5,000, the amount of the legacy paid to Ellen M. Lewis.[2]

3. The distribution of the income fund, $1,250.26, said fund being an accumulation under item 9 of the will.[3]

4. The construction of items 11, 14, 15, 16, of the will.[4]

5. The construction of the will as a whole.

*Mr. Henry C. G. Reber* (with him *Mr. William P. Bard*), for the appellant:

True, the intent of the testator must be gathered from the whole will, but when it is manifested with sufficient certainty and is not in conflict with established rules of law, it must

control: Middlesworth v. Blackmore, 74 Pa. 414; Scott's Est., 78 Pa. 40; Reck's App., Idem 432; Webb v. Hitchins, 105 Pa. 91.

1. Under the will, John Moyer must first acquire property clear of debts and of the value of $8,000 before he may receive the bequest or any portion of it. The conditions were never fulfilled by John; he never possessed the required estate, and his failure in business and utter insolvency are undisputed.

2. The testator directs his executor to pay to Ellen $5,000 when she attains the age of twenty-one years. Under the testimony, the assets are amply sufficient to pay the legacies of $5,000 to each of the four children, excluding John, in accordance with the will. The executor having paid Ellen when her legacy was payable, was entitled to credit therefor on the adjudication. His credit, however, was reduced to $3,000.

3. Under the provisions of item 9 of the will a trust was created. If any balance of income remained after paying the widow her allowance, it was to be invested for the use of the children as the will directed. This balance was not otherwise disposed of, and it was but a reasonable contingent fund out of which to maintain and preserve the trust, to keep up repairs, pay taxes and insurance, and was therefore not within § 9, act of April 18, 1853, P. L. 503: Eberly's App., 110 Pa. 95.

*Mr. D. E. Schroeder* (with him *Mr. H. O. Schrader* and *Mr. J. K. Grant*), for the appellee:

1. The indebtedness of John Moyer to his father's estate having been paid, no advancements having been made to him by the executor, the executor not having sold him out or collected the money under the contingency provided for in the will, the sum of $6,000 must be taken as part of John's distributive share in the estate. It can be followed, and if not payable to him absolutely, it certainly is a fund representing his distributive share, to be invested by the executor and the interest paid him in his lifetime. It is contended that distribution of the whole estate is to be made only upon the death of the widow. The date of John's death is uncertain; the date of his mother's death is uncertain. What, then, is to become of the accumulations of interest? They belong to John unless the item be found to be a particular intent inconsistent with

the ascertained general intent of the will: Schott's Est., 78 Pa. 40.

2. Under the terms of the trust item, whatever balance of rents remain, the executor shall invest the same for the use of the children, as in his will directed, until 1901. The balance to be so invested was the net balance, after payments to the widow, repairs, taxes and insurance. Eberly's Appeal, 110 Pa. 95, is inapplicable. The directions for accumulation are inoperative: § 9, act of April 18, 1853, P. L. 503; McKee's App., 96 Pa. 277; Washington's Est., 75 Pa. 102; Carson's App., 98 Pa. 325; Grim's App., 109 Pa. 391.

OPINION, MR. CHIEF JUSTICE GORDON:

The learned counsel for the appellant has not satisfied us that the court below erred in its decree of distribution. We adopt the construction of the will of Jacob L. Moyer given by the learned judge of the Orphans' Court. It is undoubtedly somewhat obscure, but we think that the true intention of the testator has been ascertained with reference to the devise to John.

In case of John's want of success in the business which his father had bequeathed to him, the executor is directed to sell out his interest in that business, and "any loss which may be sustained shall be deducted from John's share." So also, in case John was unsuccessful, or became profligate, and the moneys due by him had to be collected, then "he shall only receive the interest on his share in my whole estate during life."

It thus becomes important to ascertain what the testator meant by John's share in his whole estate, of which he thus speaks. The will directs, inter alia, that after the payment of the testator's debts, the residue of his estate shall be invested in safe securities, and shall be held and disposed of by his executor as follows: $5,000 to each of his two daughters when they arrive at the age of twenty one; $5,000 to each of his sons, Charles and Jacob L., when they arrive at the age of twenty-three, and to John the like sum of $5,000, as soon as he could satisfy the executor that he was worth clear of debts, eight thousand dollars. The reason for this is explained as follows: "I make this provision for my son John, because he

has an opportunity in an established business, which I cannot give to my other children."

Were it not for a subsequent item of the will which provides that if any of his children should die under the age of twenty-one, without issue, "such child's share shall go to the surviving children or their heirs," all these legacies must be taken as vested; but, as this provision could not affect John, his legacy vested in him at the time of his father's death. The contingency related only to the time of payment, so that sooner or later he, or his representatives, must come into the enjoyment of the principal sum, meanwhile it was to be invested for his use. This fact seems to have been overlooked by the counsel for the appellant; for, certainly, if the gift to John was a vested one, there could be no doubt of the testator's meaning when he spoke of John's share in his whole estate, and the attempt to limit it merely to the residuary property must be regarded as abortive. This view also seems best to accord with the testator's general intent; for, as to his other children, he makes like provision; that is, if any of them shall be found to be of bad habits or profligate, he or she shall not receive his or her legacy, but it shall be invested for the use of such a one during life, and then over to his or her heirs. It is therefore apparent, that the testator intended to treat all his children alike, and did not, by giving John what he regarded as a preference, intend to cut him out of his bequest.

What we have said disposes of the second, fourth, and fifth assignments, for they are all dependent on the first, which involves the construction of the will. As to the third, which embraces the disposition of the accumulations, we have but little to say. The principle on which the court based its order is undoubtedly sound, and whilst it is true that these accumulations might have been allowed to remain in the hands of the executor as a contingent fund, yet as it does not follow that any fund was needed for the use of the estate, we must concede something to the sound discretion of the court below.

The decree is affirmed, the appeal is dismissed, and it is ordered that the appellant pay the costs of this appeal.